INHABITANTS OF MILLINOCKET *vs.* CHARLES W. MULLEN.

Penobscot.    Opinion February 22, 1911.

*Trespass.   Constructive Possession.   Gist of Trespass   Quare Clausum.   Who May
    Sue.   Towns.   Statute, 1824, chapter 254.   Revised Statutes, chapter 16,
                        sections 49, 50 to 59 inclusive.*

"Constructive possession" of land is that possession which the law pre-
sumes the owner has, in the absence of evidence of exclusive possession in
another.

The gist of trespass quare clausum is the injury to the possessory right.

The holder of the title to land, if in actual possession by himself or authorized
representative, or in constructive possession, is the party to whom the
right of trespass accrues.

Inhabitants of a town being vested with the fee to school lots can waive
trespass in cutting timber thereon and sue in assumpsit; the right of
action not resting in the special corporation created by Revised Statutes,
chapter 16, sections 50-59, as trustees of the ministerial and school funds.

On exceptions by plaintiffs.    Sustained.

Assumpsit on account annexed for $342.47, and interest, for
"stumpage on school lots."   The writ also contained a count for
money had and received, and also an omnibus count of the usual
form.    Plea, the general issue.    At the conclusion of the testimony
for the plaintiffs, and on motion of the defendant the presiding
Justice, pro forma, ordered a nonsuit, with the stipulation that if
the action was maintainable and the exceptions to the order of
nonsuit were sustained, that the defendant should be defaulted for
the full amount claimed with interest.    The plaintiffs excepted to
the order of nonsuit.

The case is stated in the opinion.

*Stevens & Stevens*, for plaintiffs.

*Joseph F. Gould*, for defendant.

SITTING:    WHITEHOUSE, SAVAGE, SPEAR, KING, BIRD, JJ.

KING, J.    Action of assumpsit containing an account annexed for
$342.47 and interest for "stumpage on school lots," with a count

for money had and received for the same amount, and containing also the usual money counts. The only question presented is whether the action is maintainable by the plaintiffs.

It appears that the defendant caused certain lumber to be cut on the school lots in Millinocket in the years 1901-2, and received as stumpage thereof, $342.47.

This court decided, in *State* v. *Mullen*, 97 Maine, 331, which was an action for trespass involving the same acts of cutting for which the stumpage is here sued for, that the fee in these school lots became vested in the inhabitants of Millinocket, upon its incorporation, by virtue of sec. 49, c. 16, R. S., and that the acts of cutting by defendant, being subsequent to the incorporation, were trespasses.

The plaintiffs contend that they had a right of action against the defendant for trespass upon these school lots, and that accordingly they had the right, which they exercised, to waive the tort and bring this action of assumpsit for the amount of money shown, and admitted, to have been received by defendant as the fruits of his trespass.

In answer the defendant contends that the inhabitants of Millinocket, although the fee in these school lots is vested in them, cannot maintain this action because the right of action, if any exists, is in that special corporation which was created and empowered by the statute as the trustees of the ministerial and school funds. R. S., c. 16, secs. 50 to 59 inclusive. We do not think the defendant's contention is sustainable.

The fee of the school lots was in the plaintiffs at the time of the trespass, and the case does not show that the plaintiffs were not also in the actual possession of the lots at the time. But in the absence of evidence of actual possession, the plaintiffs had the constructive possession of the property — that possession which the law presumes the owner of the title to real estate has, in the absence of evidence of exclusive possession in another. The gist of the action of trespass *quare clausum* is the injury to the possessory right. Hence, it is a well settled principle that the party holding the title to real estate, if in actual possession of it, by himself or his authorized representa-

tive, or having the constructive possession of it, is the party to whom the right of an action of trespass accrues, 28 Am. & Eng. Ency. of Law, 573 and cases cited.

The conclusion follows that the plaintiffs had the right of action against the defendant for his trespass, by virtue of their title in fee to the property, unless the statute, which invested them with the fee, and which also created and clothed with power the trustees of the ministerial and school funds, has otherwise provided.

The statute relating to ministerial and school lands and the funds arising therefrom, (R. S., c. 16, sec. 49 et seq.) provides in substance, and so far as material here, that the fee in lands granted or reserved for the use of the ministry, or first settled minister, or for the use of schools in any town "shall vest in the inhabitants of such town" for such uses (§49) ; that the municipal officers, town clerk and treasurer of such town, where no other trustees are lawfully appointed for that purpose, shall be a corporation and trustees of the ministerial and school funds, with the usual powers granted to similar corporations (§50); that they shall annually elect a president clerk, and treasurer (§51); that they may sell all such ministerial and school lands belonging to and lying in their town, and the treasurer's deed thereof, executed by order of the trustees, shall pass the estate (§52); that as soon as may be they shall invest the proceeds of such sales at interest in certain securities, etc. (§53); that they may, by gift, grant or otherwise take and hold for the use of the ministry and for the schools real and personal estate, the amount of the annual income of which is limited in the statute (§54); that the income of the fund from the sale of lands under sec. 52, and from the rents and profits of real estate held under sec. 54, shall be annually applied to the support of public schools in the town and expended like other school money (§55).

The original statute was chapter 254 P. L. 1824. We have found no amendments materially changing it, but in the various revisions the language of the original act has been considerably condensed, and some portions of it omitted. In the original act it was provided, with respect to the lands the trustees were authorized to take and hold by gift, grant or otherwise, that they were

authorized "with the consent of their respective towns, at a legal meeting called for that purpose, to lease such lands or real estate, or any part or parts thereof, on such terms and conditions as said towns may prescribe ; the rents and profits to be applied to the uses herein prescribed."

It seems clear from these statutory provisions that the legislative purpose was to. place the ministerial and school funds, arising from the sale or otherwise of these lands, the fee in which was thus vested in the inhabitants of the town, in the control and management of an agency or instrumentality that should be perpetual and yet be entirely separate from the inhabitants of the town, either as individuals or as a municipality. The purpose was a wise one. It made more certain that the funds would be carefully preserved, invested, and the income thereof applied to the uses intended. This independent instrumentality, the trustees of the ministerial and school funds, was authorized to negotiate sales of the lands, and the statute provided specially the means by which the title should be transferred to purchasers. There is no provision in the statute that actions involving the title to such lands are not to be brought in the name of the inhabitants of the town in whom the fee is vested. It would seem that such actions must necessarily be so brought. The case *Argyle* v. *Dwinal*, 29 Maine, 29, which was a writ of entry, was so brought. And there is no express provision of the statute which takes from the holders of the fee of such lands, and transfers to the trustees of the ministerial and school funds, the right to maintain an action of trespass quare clausum for trespass thereon. In the absence of such an express provision we do not think the statute can be construed to imply it. To the same effect is the reasoning and the conclusion of the court in *State of Maine* v. *Cutler*, 16 Maine, page 351, where it is said : "When the first settled minister shall be settled on the territory, he would have the right to enter on the lot reserved to *him*, and as pastor of the first parish in the town, would become possessed of the lot reserved for the *ministry*, but for the Stat. C. 254, of Feb. 12, 1824, which vests it in the inhabitants of the town, and not in a particular

parish, and the town will be entitled to the management of the school land in whom the fee is vested by that statute, for the use and support of school funds therein forever."

Having a right of action against the defendant for the trespass the plaintiffs could waive the trespass and maintain assumpsit for the money which the defendant had received from the trespass. In *Gardiner Mfg. Co.* v. *Heald*, 5 Maine, 381-386, it is said : "If one man enter upon the land of another, and there cut down his trees and sell them, the party injured may waive the trespass, ratify the sale, and maintain assumpsit against the wrongdoer for the money." This principle is nowhere denied, its application being limited to cases where it is shown that the tort-feasor has received money or money's worth as the fruits of the trespass. It is therefore the opinion of the court that this action is maintainable by the plaintiffs, and in accordance with the stipulation of the parties the defendant is to be defaulted for the full amount of the bill sued for.

> *Exceptions sustained.*
> *Defendant to be defaulted for amount of bill sued for.*